## Indiana Rolling Mill Company et al. *v.* Gas Supply & Mining Company.

### [No. 5,271. Filed January 23, 1906.]

1. APPEAL AND ERROR.—*Pleadings.*—*Special Findings.*—*Same Questions Presented.*—Where the special findings show the same facts as stated in the pleadings, a decision on the special findings renders useless a decision on the pleadings.   p. 155.

2. LANDLORD AND TENANT.—*Contracts.*—*Gas-and-Oil Leases.*— *Right to Determine.*—Where the landlord grants to his lessee, "its successors and assigns," the exclusive right to explore for gas and oil on his land, such lessee or assigns to drill a well within six months or thereafter furnish the landlord free gas until said well is drilled or the property reconveyed or the lease forfeited by its terms, and the assignee did not put down such well within the time but did furnish such free gas which was accepted, the landlord could not, without a demand and the giving to such assignee of a reasonable time thereafter to sink a well, arbitrarily refuse to take such free gas and terminate such contract.   p. 158.

3. TRIAL.—*Venire de Novo.*—Where the special findings fully cover the facts in issue, a motion for a *venire de novo* should be overruled.   p. 160.

4. NEW TRIAL.—*As of Right.*—*Injunction.*—*Quieting Title.*— *Statutes.*—A new trial as of right under §1076 Burns 1901, §1064 R. S. 1881, is not demandable in a suit for injunction where plaintiff also incidentally asks to have his title quieted.   p. 160.

From Hancock Circuit Court; *Edward W. Felt,* Judge.

Suit by the Gas Supply & Mining Company against the Indiana Rolling Mill Company and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*E. H. Bundy* and *Mason & Jackson,* for appellants.

*Forkner & Forkner,* for appellee.

WILEY, J.—Appellee was the successful party below, and obtained an order perpetually enjoining appellants from drilling a gas-well upon premises described in its complaint. Upon request the court made a special finding of facts and stated its conclusions of law thereon. Exceptions were reserved to the conclusions of law. Appellants' motions for a *venire de novo,* for a new trial for cause, and as of right, were overruled. All of these questions are presented by the assignment of errors.

Under these conditions of the record there is no necessity for referring to the pleadings, for the nature of the suit is fully exhibited by the special findings, and

1. upon such findings and the conclusions of law the ultimate rights of the parties may be determined.

We will only set out the facts found, which are material to determine the questions involved: August 22, 1898, Albert S. Palmer and wife were the owners and in possession of certain real estate. On that day they entered into a written contract with J. R. Bennett & Co., the material covenants and conditions of which were as follows: They granted to J. R. Bennett & Co., "its successors and assigns," for a term of one year, or so long as gas or oil may be found upon the premises, the exclusive right to enter thereon at all times for the purpose of drilling and operating for oil, gas or water; to erect, maintain or remove all buildings, structures, pipe-lines and machinery necessary for the production and transportation of oil, gas, etc. The contract provided that the Palmers should have the right to use the premises for farming purposes, except such parts as might be actually occupied by J. R. Bennett & Co. A well was to be drilled within six months, or the company was to pay the Palmers "a rental of free gas for three fires and six lights until said well is drilled or the property hereby granted is reconveyed to first party, or this lease forfeited by its terms." The party of the second part (J. R. Bennett & Co.) was to furnish the first

party (the Palmers) free gas, as above indicated, as long as the second party should use any gas-well under the terms of the contract. The first party was to lay and maintain necessary service-pipes from the well or pipe-line to their residence, and the second party was to make the connection. By the terms of the instrument the first party granted to the second party, etc., for a term of one year, or so long as gas and oil should be found, the right to enter upon said premises and explore for gas and oil, and the right to erect, maintain and remove buildings, pipe-lines, etc. The party of the second part, by such instrument, was granted the right to extend for three years the time for drilling the first well, or so long as the "grantors should use gas from said grantee's lines." In lieu of drilling a well within six months, the party of the second part had the right to pay a rental to the first party of free gas, etc., until said well should be drilled, etc. Said instrument was duly acknowledged and recorded. Shortly after the execution of the contract the second party laid a four-inch pipe-line along the west side of the land. Within sixty days the second party connected with its mains the service-pipes of the first party, and continued to furnish said first party free gas for domestic purposes, as provided in the contract, until said first party disconnected their service-pipes, and voluntarily ceased to use gas from the second party's lines, which they did on June 24, 1903. From the execution of the contract up to June 27, 1903, the first party was in the exclusive possession of the real estate, and neither the second party nor appellee have ever entered upon or had possession of said real estate, except to lay the gas-pipes, as above found. Neither the first party nor appellee has ever drilled any gas, oil or water wells upon said premises. Appellee company was organized for the purpose of drilling and operating gas and oil-wells, and selling its product to the public. The appellant Indiana Rolling Mill Company is a manufacturing company, using

natural gas for fuel in the manufacture of its products, and for said purpose owns leases, and drills and operates gas-wells. The second party until shortly before parting with "their said lease," were willing to drill a gas-well upon said premises, and the first party until shortly before cutting off the gas, as above found, was satisfied with the arrangement by which the second party supplied gas for fuel, and by which the drilling of wells on the premises was deferred, and during such time the first party made no demand for the drilling of a well, nor made any complaint for a failure so to drill a well, "the compensation received under said lease, or any matter pertaining thereto." In the latter part of May or early part of June, 1903, Albert S. Palmer called upon the secretary and general manager of J. R. Bennett & Co. and orally notified him that the lease to J. R. Bennett & Co. had expired, and that he was contemplating leasing the farm to other parties, permitting them to drill for gas. On June 27, 1903, the Palmers executed to the Indiana Rolling Mill Company a written lease upon said real estate, granting to it the right to enter upon and drill for gas and oil thereon. Prior to the execution of said lease said company had actual knowledge of the existence of the lease of the Palmers to J. R. Bennett & Co., and of the terms and conditions thereof, and knew that the Palmers had received gas for domestic purposes until they voluntarily disconnected their service-pipes from J. R. Bennett & Co.'s mains. In the latter part of June, 1903, J. R. Bennett & Co. sold to appellee the lease first-above described, and on July 1, 1903, delivered the same to it, but no written assignment was made. By such sale and delivery appellee succeeded to all the rights and equities of J. R. Bennett & Co. "under said lease." Appellee paid a valuable consideration therefor and took possession thereof. A few days after the lease of the Palmers was delivered to the rolling mill company it erected a derrick and was proceeding to drill a well on

said premises, when it was temporarily restrained from proceeding further by an order issued in this cause.

As a conclusion of law the court stated that "the law is with the plaintiff, that the restraining order heretofore issued be made permanent, and the defendant rolling mill company enjoined from drilling upon the real estate," etc.

Under the contract and facts found but a single question is presented for decision. That question is this: By the terms of the contract and the facts found, had the lease expired in the latter part of May or the early part of June, 1903? If it had, then J. R. Bennett & Co., or its assigns, had no further rights under it, and the Palmers had the right to enter into the contract with appellant rolling mill company. On the contrary, if it had not expired, nor had not been forfeited, the Palmers could not confer any rights to any one else to enter upon the premises and drill gas-wells thereon.

Under the original lease J. R. Bennett & Co. was granted the exclusive right "to enter upon the land at all times for the purpose of drilling and operating for oil and gas," and that right continued "for the term of one year, or so long as gas or oil is found upon the premises." It was bound to drill a well within six months, or in lieu thereof pay a rental of free gas, etc., "until said well is drilled, or the property hereby granted is reconveyed,  *   *   *  or this lease forfeited by its terms."

The contract does not lay upon J. R. Bennett & Co. the absolute duty of drilling a well within a fixed period, but gives it the option either to drill a well within that period, or to pay a rental of free gas for domestic purposes until said well is drilled. The contract was a continuing one, and, so long as J. R. Bennett & Co. performed the covenants required by the contract, the Palmers could not arbitrarily say that it had expired, or that it had been forfeited. It requires two or more parties to make a contract,

Indiana Rolling Mill Co. *v.* Gas Supply, etc., Co.—37 Ind. App. 154.

and so long as one of the parties performs all the duties enjoined upon him the other party can not be relieved of his obligations.

We have no doubt but that the Palmers had a right to demand and have a well drilled, but so long as they accepted the rental agreed upon the contract was binding upon them, and they could not say that the contract had expired or that J. R. Bennett & Co. had forfeited its rights thereunder, until a demand had been made for drilling a well, and a reasonable time had elapsed after the demand in which to drill.

As was said in the very recent case of *New American Oil, etc., Co.* v. *Troyer* (1906), 166 Ind. 402: "There being no definite time limit within which the well must be constructed, the law intervenes and directs that it shall be accomplished within a reasonable time. This means within a reasonable time at the option of the landowner." The acceptance of the rental, which in this case was free gas, was a waiver of performance in developing the property during the time such gas was furnished and accepted. *Consumers Gas Trust Co.* v. *Worth* (1904), 163 Ind. 141; *Hancock* v. *Diamond Plate Glass Co.* (1904), 162 Ind. 146. The voluntary severance by the Palmers of their service-pipes from the mains of J. R. Bennett & Co. could not annul the latter's rights under the contract.

In *New American Oil, etc., Co.* v. *Troyer, supra,* the contract was in all essential respects similar to the one here. There, upon failure to drill a well within the specified time, the landowner agreed to accept an annual rental in money, while here, the rental agreed upon was to be free gas furnished the landowner until a well should be drilled. In that case the court said: "Under a contract of this sort parties must act fairly with each other. The landowner must be given a fair opportunity to compel such timely operations as will preserve the underlying oil and gas, and prevent its being mined through wells on other

premises.    While, on the other hand, he will not be permitted to take advantage of delays that have been reasonably induced by his own conduct, and force a forfeiture for nonperformance.    The operator must have a fair chance to perform his contract."    See, also, *LaFayette Gas Co.* v. *Kelsay* (1905), 164 Ind. 563; *Indiana Nat. Gas, etc., Co.* v. *Beales* (1906), 166 Ind. 684; *New Amsterdam Oil, etc., Co.* v. *Wolff* (1906), 166 Ind. 704; *Consumers Gas Trust Co.* v. *Ink* (1904), 163 Ind. 174; *Consumers Gas Trust Co.* v. *Worth, supra; Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320.    These authorities, applied to the facts in this case, fully support the conclusion reached by the trial court.    This disposes of the main point of contention.

Appellants insist that their motion for a *venire de novo* should have been sustained for the reasons (1) that the special findings are so defective, uncertain and ambiguous that no judgment could be rendered thereon; (2) that the findings contain the evidence and not the facts established by the evidence.    We think the findings are not defective in failing to find the facts.    Every issue tendered by the pleadings is fully covered.    The motion was properly overruled.

Appellants further contend that they were entitled to a new trial, as of right, upon the theory that appellee, in its complaint, among other things asks that its title be quieted.    While the complaint does ask for such relief, it is clear that the main purpose of the suit was to obtain injunctive relief, and this is the only relief given by the conclusion of law and decree.    While the record and briefs refer to the contract as a lease, it is a misnomer so to designate it.    It is a contract, by the terms of which the landowner gave to J. R. Bennett & Co., "its successors and assigns," the right, under certain conditions, to explore for gas and oil beneath the surface of the premises.

In any event, the prayer here to quiet title is only an incident to the main relief sought, and in such case a party is not entitled to a new trial as of right, under the provisions of §1076 Burns 1901, §1064 R. S. 1881. *Nutter* v. *Hendricks* (1898), 150 Ind. 605; *Bradford* v. *School Town of Marion* (1886), 107 Ind. 280; *Thompson* v. *Kreisher* (1897), 148 Ind. 573; *Atkinson* v. *Williams* (1898), 151 Ind. 431.

Appellants were not entitled to a new trial as of right.

Appellants have not argued their motion for a new trial for cause.

We find no error, and the judgment is affirmed.